## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SHAUNA M. JOHNSON**                          **CIVIL ACTION**

**VERSUS**                                               **NO. 21-383**

**KENDALL TURNER AND MELANIE**        **SECTION D (3)**
**MONTROLL**

### ORDER AND REASONS

Before the Court is Defendants Lieutenant Kendall Turner and Captain Melanie Montroll of the Harbor Police Department of the Port of New Orleans' Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56.[1] Plaintiff Shauna Johnson has filed an Opposition.[2] Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Defendants' Motion for Summary Judgment.

### I.    FACTUAL BACKGROUND

This case arises out of the arrest of Plaintiff Shauna Johnson on February 23, 2020. On February 23, 2020 at approximately 11:15 a.m., Plaintiff was working as a Lyft driver and was present at the Port of New Orleans for the purpose of picking up passengers.[4] A significant amount of vehicular and pedestrian traffic was present in the area.[5] Plaintiff identified her passengers and pulled her vehicle over to the right side of the road intending to pick them up.[6] Plaintiff alleges that Lt. Kendall Turner

---

[1] R. Doc. 61.
[2] R. Doc. 65.
[3] R. Doc. 69.
[4] R. Doc. 18 at ¶¶ 10-11.
[5] R. Doc. 1 at ¶ 10.
[6] Id. at ¶ 11.

of the Harbor Police Department of the Port of New Orleans approached her passengers and instructed them to walk elsewhere.[7] Plaintiff exited her vehicle and asked Lt. Turner where he had directed her passengers.[8] Lt. Turner instructed her to depart that area.[9] Lt. Turner then stood in front of Plaintiff's car and began directing traffic.[10] Plaintiff claims that she turned on her left turn signal, but was unable to proceed because there was a significant amount of traffic blocking her ability to merge into the left lane.[11] Plaintiff alleges that Lt. Turner then again approached her driver side window and told her she was "going to jail," reached through her open window, and removed the keys from the ignition.[12] Plaintiff asserts that she attempted to explain why she was unable to leave to Lt. Turner, but instead Lt. Turner asked her for her driver's license.[13] Plaintiff did not have a physical driver's license and instead tried to show Lt. Turner her license on the LA Wallet phone app.[14] Plaintiff claims that Lt. Turner would not allow her to access her phone.[15] While Plaintiff objected to Lt. Turner's conduct as an abuse of power, a second officer approached Plaintiff's car.[16] Plaintiff contends that after she continued

---

[7] *Id.* at ¶ 12. The Court notes that Plaintiff refers to Defendant Turner as "Sgt. Turner" throughout the Amended Complaint. In their briefs, both Plaintiff and Defendant refer to him as Lieutenant Turner and he testified in his deposition that he is a lieutenant. *See* R. Doc. 61-3. For consistency, the Court will refer to him by his current rank of lieutenant or by last name.

[8] *Id.*

[9] *Id.* at ¶ 13.

[10] *Id.* at ¶ 14.

[11] *Id.* at ¶¶ 14-15.

[12] *Id.* at ¶¶ 16-17.

[13] *Id.* at ¶¶ 18-19.

[14] *Id.* at ¶¶ 19-20.

[15] *Id.* at ¶ 20.

[16] *Id.* at ¶ 21.

to inform the officers that they were engaging in misconduct, the unidentified Officer John Doe indicated that he did not have a choice about arresting her and did so.[17]

Plaintiff filed the present lawsuit against Lt. Turner and Captain Montroll and argues that she was unlawfully arrested in violation of the Fourth Amendment, that the arrest was in retaliation in violation of her First Amendment rights for her criticism of Lt. Turner, and that Captain Montroll failed to properly supervise Lt. Turner.[18] Plaintiff also asserts a state law false arrest claim against Defendants.[19]

Defendants Turner and Montroll of the Harbor Police Department have filed a Motion for Summary Judgment.[20] Defendants argue that Plaintiff's federal and state law claims for false arrest as well as her claim for violation of her First Amendment rights and negligent supervision must be dismissed because the Defendants had probable cause to arrest Plaintiff based on her refusal to move her car in violation of Lt. Turner's order and her inability to produce a valid driver's license.[21] In addition, Defendants contend that they are entitled to qualified immunity.[22]

Plaintiff has filed an Opposition and argues that Defendants are not entitled to qualified immunity because there is a disputed issue of material fact regarding whether she complied with Lt. Turner's order to move her car and whether she was given an opportunity to access her driver's license stored on the LA Wallet app.[23]

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] R. Doc. 61.
[21] *Id.*
[22] *Id.*
[23] R. Doc. 65.

Plaintiff also contends that because there is a disputed issue of material fact, her First Amendment and negligent supervision claims cannot be dismissed.[24]

Defendants have filed a Reply and reiterate their argument that there was probable cause for Plaintiff's arrest because she did not take any steps to move her car in compliance with Lt. Turner's order and because a search of a police database revealed that she did not have a valid driver's license.[25]

## II.   LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[27] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[28] Instead, summary

---

[24] *Id.*

[25] R. Doc. 69.

[26] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[28] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[29]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[30] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[31] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[32] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[33]

---

[29] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[30] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[31] *Id.* at 1265.
[32] *See Celotex*, 477 U.S. at 322-23.
[33] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

### B.  42 U.S.C. § 1983 and the Qualified Immunity Claim.

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law. Specifically, it provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[34]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[35] To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[36] In this matter, Plaintiff has sued the two arresting officers in their individual capacities.[37] A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show that the official, acting under state law, caused the deprivation of a federal right.[38]  According to the Fifth

---

[34] 42 U.S.C. § 1983.
[35] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[36] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[37] R. Doc. 1.
[38] *Terry v. City of New Orleans*, 523 F. Supp. 2d 486 (E.D. La. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

Circuit, "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." [39]

As a defense to § 1983 claims, government officials may invoke qualified immunity, which "shields government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[40] Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.[41] The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[42] "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[43] "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[44] Once the government

---

[39] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)) (internal citation omitted).

[40] *Mabry v. Lee County*, 100 F.Supp.3d 568, 572 (N.D. Miss. 2015) (quoting *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *cert. granted, decision rev'd on other grounds*, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)).

[41] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[42] *Id.* at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted).

[43] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

[44] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted).

official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[45]

To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[46] It is up to the district courts' sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.[47]

## III.   LAW AND ANALYSIS

### A.  Plaintiff's Fourth Amendment Claim.

The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause.[48] Thus, to prevail on a § 1983 claim alleging false arrest Plaintiff must show the arresting officers lacked probable cause for her arrest.[49] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[50] This Court has held that probable cause means a "fair probability" that a crime has been committed.[51] A police officer

---

[45] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[46] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

[47] *Pearson*, 555 U.S. at 236.

[48] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

[49] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004).

[50] *Id.* at 655-56 (quoting *Glenn*, 242 F.3d at 313 (internal quotation marks omitted).

[51] *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)); *Babin v. Par. Of Jefferson,* Civ. A. No. 16-2954, 2018 WL 794535, at *8 (E.D. La. Feb. 8, 2018) (citing *Haggerty*, 391 F.3d at 656

who reasonably but mistakenly concludes that he has probable cause to arrest a suspect is entitled to qualified immunity.[52] According to the Fifth Circuit, Plaintiff must clear a significant hurdle to defeat Defendants' assertion of qualified immunity because, "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost."[53] Additionally, although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark."[54]

Defendants argue that they had probable cause to arrest Plaintiff because she was parked in a manner that obstructed traffic and threatened safety and she refused to comply with lawful police orders to move her car in violation of La. R.S. 32:56(A).[55] In addition, Defendants contend that they had probable cause to arrest Plaintiff because she failed to provide a valid driver's license in violation of La. R.S. 32:52.[56]

In response, Plaintiff argues that whether there was probable cause for her arrest cannot be determined at this time because there is a genuine issue of material fact in dispute, specifically whether she complied with Lt. Turner's order to move her car.[57] Plaintiff contends that she was attempting to comply with Lt. Turner's order but was unable to move her car due to the heavy volume of incoming traffic and Lt. Turner's failure to assist her by blocking traffic.[58] Plaintiff further argues that Defendants did not allow her to access her driver's license on the LA Wallet app on

---

(noting that "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

[52] *Tarver v. City of Edna*, 410 F. 3d 745 (5th Cir. 2005), citing *Hunter v. Bryant*, 502 U.S. 224 (1991).

[53] *Haggerty*, 391 F.3d at 656 (citation omitted).

[54] *Garcia*, 179 F.3d at 269.

[55] R. Doc. 61.

[56] *Id.*

[57] R. Doc. 65.

[58] *Id.*

her phone and thus her failure to provide a valid driver's license did not create probable cause for her subsequent arrest.[59]

In their reply, Defendants argue that there is no evidence that Plaintiff attempted to comply with Lt. Turner's order to move her car beyond her own self-serving testimony.[60] Defendants contend that Lt. Turner was performing traffic control duties and lawfully demanded that Plaintiff move her car and that her refusal to do so resulted in her impeding the flow of traffic in direct violation of La. R.S. 32:64(B).[61] Defendants further argue that Plaintiff was unable to login and access her driver's license on the LA Wallet app and that a search in a police database for her license did not reveal a valid driver's license.[62] Thus, Defendants contend there was probable cause to arrest.[63]

Plaintiff was arrested for refusing to comply with Lt. Turner's order to move her vehicle in violation of La. R.S. 32:56 (obedience to police officers); failing to produce a valid driver's license in violation of La. R.S. 32:52 (Driver must be licensed); and for violation of La. R.S. 32:64(B) (general speed law).[64] Courts have held that "if there was probable cause for any of the charges made…then the arrest was supported by probable clause, and the claim for false arrest fails."[65] While these charges were

---

[59] *Id.*
[60] R. Doc. 69.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] R. Doc. 1 at ¶ 26.
[65] *Lockett v. New Orleans City*, 639 F.Supp.2d 710, 733 (E.D. La. May 5, 2009) (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

later dropped,[66] whether or not there was probable cause is determined at the "moment of the arrest."[67]

Plaintiff and Defendants primarily focus their argument on whether there was probable cause for Plaintiff's arrest based on her noncompliance with Lt. Turner's order and violation of La. R.S. 32:56. However, Plaintiff was also arrested for failing to provide a valid driver's license in violation of La. R.S. 32:52.[68] La. R.S. 32:52 states that:

> No person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to so do as required by the laws of this state nor shall any person permit or allow any other person to drive or operate any vehicle owned or controlled by him upon highways of this state unless and until such other person has been issued a license to so do as required by the laws of this state.

In determining whether probable cause existed for Plaintiff's arrest for her failure to produce a valid driver's license, the Court focuses on the Plaintiff's and Defendants' actions leading to Plaintiff's arrest, drawing all reasonable inferences in favor of Plaintiff.

The Factual Background portion of this Order details the allegations made in Plaintiff's Amended Complaint.[69] In his deposition, Lt. Turner stated that he was directing traffic at the Port of New Orleans on February 23, 2020 when he saw Plaintiff's car stopped in the right lane attempting to pick up passengers.[70] He

---

[66] R. Doc. 1 at ¶ 28. On March 6, 2020, a *nolle prosequi* was issued by the Municipal and Traffic Court of New Orleans with respect to all three violations.
[67] *Haggerty*, 391 F.3d at 655 (quoting *Glenn*, 242 F.3d at 313).
[68] *Id.*
[69] *See* R. Doc. 18.
[70] R. Doc. 61-3 at p. 59.

instructed Plaintiff to pull her car forward, pointed her towards the proper pickup location, and then returned to directing traffic.[71] Plaintiff responded angrily, insulted Lt. Turner, and initially refused to move her car.[72] However, she eventually re-entered her car.[73] After a few minutes, Lt. Turner noticed that Plaintiff had still not moved her car, so he approached Plaintiff again and instructed her for a second time to move her car to the proper location.[74] Plaintiff refused to move her car and again responded angrily and insulted Lt. Turner.[75] At this time, Lt. Turner asked Plaintiff to produce her driver's license.[76] Plaintiff was unable to produce her driver's license and told Lt. Turner that "she didn't have a driver's license."[77] Turner testified that he then conducted a name check and learned that Plaintiff did not have a driver's license.[78] Plaintiff was subsequently arrested because "she failed to move her vehicle, and she didn't have a driver's license."[79]

Lt. Turner's testimony is supported by Officer Tillery, who was also present during Plaintiff's arrest, and stated in his deposition that he heard Lt. Turner ask Plaintiff to move her vehicle and Plaintiff did not do so.[80] Tillery further testified that he heard Lt. Turner ask Plaintiff for her driver's license, and "she was refusing."[81] Further, after Lt. Turner had asked her to produce her driver's license and after

---

[71] *Id.* at p. 67.
[72] *Id.* at p. 69.
[73] *Id.*
[74] *Id.* at p. 68-69.
[75] *Id.*
[76] *Id.* at p. 69-70, 90.
[77] *Id.* at p. 92.
[78] *Id.* at p. 122.
[79] *Id.* at p. 94.
[80] *Id.* at p. 82-84.
[81] R. Doc. 69-1 at p. 102.

Plaintiff had exited her vehicle and was standing beside it, Officer Tillery testified that "[s]he opened that app, and it had LA Wallet on the screen, but she was unable to put in a valid password or anything to present to me that she had credentials."[82] At that time, Plaintiff was being detained by the officers but was not yet under arrest.[83]

A separate officer not named as a defendant, Officer Drew Mercadel, testified in his deposition that he arrived at the scene, spoke with Plaintiff and that he called a police dispatch office and had them search for her name in a police National Crime Information Center ("NCIC") database used to locate individual's driver's licenses.[84] Officer Mercadel testified that the search of the police NCIC database revealed that Plaintiff had never had a valid driver's license and only had a Louisiana state ID.[85] Officer Mercadel further testified that he asked Plaintiff for her driver's license and she did not reply.[86] Officer Mercadel informed Lt. Turner and the other officers on the scene of the police NCIC database results that "it came back that she had no DL."[87] Accordingly, Lt. Turner ordered that Plaintiff be placed under arrest and stated in his deposition "[o]nce she came back with no driver's license on file, I was left with no choice."[88]

---

[82] *Id.* at p. 104.
[83] *See* R. Doc. 69-1 at p. 109; *see also* R. Doc. 69-2 at p. 71-72.
[84] R. Doc. 69-2 at p. 78-79.
[85] *Id.*
[86] *Id.* at p. 80.
[87] *Id.* at p. 96.
[88] *Id.*; *see also* R. Doc. 61-3 at p. 70, 88.

An officer's conduct is objectively reasonable "if a reasonable person in their position could have believed he had probable cause to arrest."[89] The Fifth Circuit has held that "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed."[90] In *Deville v. Marcantel*, an officer communicated the reason for a police stop of a vehicle to the defendant officer, specifically informing him that the plaintiff had been speeding and refused to sign a traffic ticket.[91] Based on the information received from the fellow officer, the defendant arrested plaintiff.[92] The Fifth Circuit determined that the defendant officer was entitled to qualified immunity because he reasonably believed that the plaintiff had been speeding based on information received from a seemingly reliably witnessing officer.[93]

Plaintiff contends that she possessed a digital copy of her driver's license in the LA Wallet app on her phone and that Lt. Turner did not allow her to access her phone.[94] This testimony is contradicted by the deposition testimony of Officer Tillery and Officer Mercadel, who both stated that Plaintiff was unable to open the LA Wallet app and was unable to input a valid password and display a valid driver's license.[95]

---

[89] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).
[90] *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (citing *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)).
[91] *Id.*
[92] *Id.*
[93] *Id.* at 167.
[94] R. Doc. 61-4 at p. 59-60.
[95] R. Doc. 69-1 at p. 104; *see also* R. Doc. 69-2 at p. 79.

Plaintiff fails to address the fact either in her deposition or in her Opposition, or provide any evidence disputing, that a police NCIC database search revealed that Plaintiff did not have a valid driver's license. Plaintiff does not dispute that she did not produce a driver's license.

Further, Plaintiff insists Louisiana law "reuqires [sic] Lt. Turner to take all steps within his power to verify whether Ms. Johnson possessed a driver's license" and contends that Defendants failed to do so when they ordered her not to reach for her or touch her phone.[96] La. R.S. 32:411.1(C)(1) requires an officer "to make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license."[97] The officers did so. Lt. Turner requested Plaintiff provide her driver's license and Officer Mercadel then searched a police NCIC database for Plaintiff's driver's license.[98] As stated by Officer Mercadel in his deposition, Officer Mercadel called the police dispatch office and entered Plaintiff's available information, including her full name, date of birth, race, and sex, into a police NCIC search database which determined that she did not have a valid driver's license.[99] In addition, both Officers Tillery and Mercadel also asked Plaintiff to provide evidence of a driver's license.

Further, the Court determines that it was objectively reasonable for Lt. Turner to rely on Officer Mercadel's statement that a search of the police NCIC database was unable to locate a valid driver's license for Plaintiff. Officer Mercadel had been a

---

[96] R. Doc. 65.
[97] La. R.S. § 32:411.1(C)(1).
[98] R. Doc. 69-2 at p. 78-79.
[99] *Id.*

police officer for seventeen years and had previously searched for driver's licenses in the police search system.[100] Officer Mercadel informed Lt. Turner and the other officers on the scene of this fact and based on this information, Lt. Turner ordered that Plaintiff be arrested.[101] While Plaintiff maintains that there is a genuine issue of material fact in dispute, the Court disagrees. The Court finds any issues in dispute to be minor issues, none of which impacts the Court's finding that probable cause existed for Plaintiff's arrest. Accordingly, it was objectively reasonable for Lt. Turner to rely on this information provided to him by his fellow officers following a search of the NCIC database, and Lt. Turner had probable cause to order the arrest of Plaintiff. Thus, Plaintiff's Fourth Amendment claim must be dismissed.

### B. Plaintiff's First Amendment Claim.

Plaintiff has also brought a retaliatory First Amendment claim and argues that her First Amendment rights were violated when the Defendants arrested her in response to her criticism of them.[102] In their Motion for Summary Judgment, Defendants argue that Plaintiff has no First Amendment claim because the Defendants had probable cause to arrest her and because Plaintiff has not provided sufficient evidence to show that her First Amendment rights were violated.[103] Defendants also assert the defense of qualified immunity and maintain that they are entitled to qualified immunity because they did not violate Plaintiff's First

---

[100] R. Doc. 69-2 at p. 10.
[101] *Id.* at p. 96.
[102] R. Doc. 1 at ¶¶ 49-54.
[103] R. Doc. 61.

Amendment rights.[104] In response, Plaintiff reiterates that there is a genuine issue of material fact in dispute regarding whether there was probable cause to arrest her.[105] Plaintiff also argues that even if there was probable cause for her arrest, an exception exists because officers normally do not arrest members of the public for disobeying police instructions and violating traffic laws.[106]

The Fifth Circuit has held that to prevail on a First Amendment retaliation claim, a plaintiff must plead and prove the absence of probable cause.[107] In *Roy v. City of Monroe*, the Fifth Circuit held that the plaintiff could not rebut an officer's qualified immunity defense without, first, producing evidence that plaintiff's arrest was unsupported by probable cause and, second, establishing that the absence of probable cause would have been apparent to any reasonable officer in plaintiff's position.[108] The Fifth Circuit in *Roy* recognized that there is an exception to the requirement of probable cause, noting:

> The Supreme Court has recognized a "narrow" exception to this rule where the "plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[109]

---

[104] *Id.*

[105] R. Doc. 65.

[106] *Id.*

[107] *Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020) (citing *Nieves v. Bartlett*, ––– U.S. ––––, 139 S. Ct. 1715, 1725, 204 L.Ed.2d 1 (2019)).

[108] *Id.*; (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (holding, in a First Amendment retaliation suit, that "[i]f probable cause existed ... or if reasonable police officers could believe probable cause existed," then the defendants would be "exonerated" from liability)).

[109] *Nieves*, 139 S. Ct. at 1727.

Plaintiff argues that this exception applies to the present case because officers normally do not arrest members of the public for disobeying police instructions and violating traffic laws.[110]

As detailed above, the Court has determined that there was probable cause for Defendants to arrest Plaintiff for failing to have a valid driver's license in violation of La. R.S. 32:52. The Court has determined that there is no genuine issue of material fact in dispute regarding that matter. Accordingly, the Court must next determine whether the exception outlined by the U.S. Supreme Court in *Nieves v. Bartlett* applies. The Fifth Circuit and numerous courts within its jurisdiction have upheld arrests for driving without a valid driver's license.[111] Further, Plaintiff is unable to identify any other similarly situated rideshare drivers who were not arrested for failing to produce a valid driver's license at the Port of New Orleans and were criticizing the police. Accordingly, there is no evidence that the exception outlined by the U.S. Supreme Court in *Nieves* applies to Plaintiff in the present case. Thus, Plaintiff's First Amendment claim must be dismissed.

---

[110] R. Doc. 65.

[111] *See U.S. v. Kye Soo Lee*, 962 F.2d 430 (5th Cir. 1992); *see also U.S. v. Molinero Puente*, 778 F. App'x 311, 312 (5th Cir. 2019) (finding probable cause to stop and arrest plaintiff in light of his three violations of Texas law—driving with an expired license plate, driving without a valid driver's license, and possession of a "fictitious" driver's license); *see Kaltenbach v. Breaux*, 690 F. Supp. 1551, 1554-55 (W.D. La. 1988) (in which plaintiff's arrest for driving without a valid license, with no vehicle registration, and no motor vehicle inspection tag was upheld); *Philips v. Newby*, No. 6:11–cv–308, 2012 WL 1750690 (E.D. Tex. May 16, 2012) (finding that plaintiff's failure to produce his driver's license in response to Defendant's demand created probable cause for his arrest); *see also Ashcraft v. City of Vicksburg,* No. 5:11cv176–DPJ–FKB, 2013 WL 3207411, at *11 (S.D. Miss. June 24, 2013) (finding that plaintiff was unable to produce a Mississippi driver's license, thus giving the arresting officer probable cause to issue citations).

### C. Plaintiff's Negligent Supervision Claim.

Plaintiff also claims that Defendant Captain Montroll is liable for negligent supervision.[112] Plaintiff contends that Captain Montroll "failed to comply with her obligation to properly and adequately supervise and discipline her subordinate officers, and she failed to intervene in Ms. Johnson's wrongful arrest."[113] Defendants argue that there was probable cause for Plaintiff's arrest and thus Captain Montroll cannot be held liable for negligent supervision because Plaintiff did not suffer any injury or damages.[114]

"'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'"[115] "The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'"[116]

In order to bring a claim for negligent supervision, a plaintiff must prove the following:

> (1) the defendant had a duty to conform its conduct to a specific standard;
> (2) the defendant failed to conform its conduct to that standard;
> (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries;

---

[112] R. Doc. 1 at ¶¶ 43-48.
[113] *Id.* at ¶ 23.
[114] R. Doc. 69.
[115] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).
[116] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the plaintiff and the plaintiff's injuries were within the scope of the defendant's duty); and
(5) the plaintiff suffered damages.[117]

In this matter, the Court has determined that there was probable cause for Plaintiff's arrest. Thus, Plaintiff has not suffered an injury or damages for which Defendants, specifically Captain Montroll, can be held liable. Further, viewing the evidence in a light most favorable to Plaintiff, there is no evidence in the record that Montrell acted with deliberate indifference. Instead, as indicated earlier, Montrell relied on a third officer's check of the NCIC database which revealed that the Plaintiff did not have a valid driver's license. Accordingly, Plaintiff's negligent supervision claims must be dismissed.

### D. Plaintiff's State Law False Arrest Claim.

Plaintiff has also asserted a false arrest claim under Louisiana state law against the Defendants.[118] Plaintiff argues that there was no probable cause for her arrest.[119] Defendants contend that there was probable cause because Plaintiff failed to comply with Lt. Turner's instructions and failed to present a valid driver's license.[120]

Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority.[121] "The tort of

---

[117] *Roberts v. Benoit*, 605 So.2d 1032, 1040–46 (La. 09/09/1991).
[118] R. Doc. 18 at ¶¶ 29-35.
[119] *Id.*
[120] R. Doc. 61.
[121] *Miller v. Desoto Reg'l Health Sys.*, 13–639 (La.App. 3 Cir. 12/11/13), 128 So.3d 649, 658 (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977)).

false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention."[122] Louisiana Code of Criminal Procedure Article 213 provides that a peace officer may arrest a person without a warrant when the peace officer "has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer."[123] Arrests made with probable cause are not unlawful and therefore plaintiffs cannot recover damages for false arrest or false detention.[124] Further, La. Stat. Ann. 9:2798.1 immunizes public entities and their officers and employees from tort claims based on "policymaking or discretionary acts when such acts are within the course and scope of ... lawful powers and duties."[125]

Here, as detailed above, Lt. Turner relied on information provided to him by his fellow officers following a search of the NCIC database and thus, as detailed extensively above, there was probable cause for Defendants to arrest Plaintiff. Accordingly, Plaintiff's state law claim for false arrest must be dismissed.

---

[122] *Id.* (citing *Kennedy v. Sheriff of E. Baton Rouge*, 05–1418, p. 32 (La.7/10/06), 935 So.2d 669, 690).

[123] La. C.Cr.P. art. 213(3). *See also Henry v. United States*, 361 U.S. 98 (1959).

[124] *Miller v. Desoto Reg'l Health Sys.*, 13–639 (La.App. 3 Cir. 12/11/13), 128 So.3d 649, 658 (citing *Tabora v. City of Kenner*, 94–613 (La.App. 5 Cir. 1/18/95), 650 So.2d 319, writ denied, 95–402 (La.3/30/95), 651 So.2d 843.); *see also Dyas v. Shreveport Police Dep't*, No. 48,804–CA (La. App. 2nd Cir. 2014), 136 So. 3d 897.

[125] *Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138, p. 12 (La. 5/20/03), 851 So. 2d 959, 967; *see also Dominique v. Parish*, 2019-0452, p. 10 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 314 ("Specifically, under [this statute], public entities, including sheriffs and sheriff's deputies, are immune from tort claims based on their policy-making decisions or discretionary acts carried out within the course and scope of their employment." (citation omitted)); cf. La. Stat. Ann. § 9:2798.1(C)(2) (foreclosing immunity for defendants whose acts or omissions "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct").

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[126] is **GRANTED.**

New Orleans, Louisiana, August 15, 2022.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[126] R. Doc. 61.